UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL MORGAN | ) | |
|     Petitioner, | ) | Case No. 08 C 3378 |
| | ) | |
|     v. | ) | District Judge David Coar |
| | ) | |
| TERRY MCCANN | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| in his official capacity as Warden, | ) | |
| Stateville Correction Center, | ) | |
| Illinois Department of Corrections | ) | |
| | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Petitioner Samuel Morgan's Discovery Motion [dkt 45], brought pursuant to Rule 6 of the Rules Governing Section 2254 Cases, was referred to this court by the District Judge [dkt 33]. Respondent Terry McCann in his official capacity as Warden of the Stateville Correctional Center, Illinois Department of Corrections, has filed a response [dkt 53], and Morgan has filed a reply [dkt 54].[1] The court held a hearing on the motion.[2] For the reasons below, the motion is granted in part and denied in part.

---

[1] The parties' submissions are cited as follows: Petition for Writ of Habeas Corpus – Person in State Custody ("Pet. at __."); Petitioner Samuel Morgan's Discovery Motion Pursuant to Rule 6 of the Rules Governing Section 2254 Cases ("Mot. at __."); Response in Opposition to Petitioner's Motion for Discovery ("Resp. at __."); and Petitioner Samuel Morgan's Reply in Support of His Discovery Motion Pursuant to Rule 6 of the Rules Governing Section 2254 Cases ("Reply at __."). Exhibits to the Petition are cited as ("Pet. Ex. __.")

[2] That hearing is cited as "Hrg. Feb. 24, 2009."

# BACKGROUND

Morgan's case, unsurprisingly, has a long procedural history.³ In 1983, Morgan was convicted in a jury trial of the murders of William Motley and Kenneth Merkson, and the rape and aggravated kidnapping of Phyllis Gregson. Morgan received a death sentence on the murder charges, and prison terms for rape and aggravated kidnapping.

Facts at Trial

The Illinois Supreme Court described the evidence at Morgan's original trial in summary as follows. Morgan went with his friends Motley and Merkson to Elijah Prater's apartment on the afternoon of January 27, 1982. The four men drank alcohol and used various drugs. Prater's friend Phyllis Gregson later joined them. *Morgan III*, 817 N.E.2d at 528. All five spent the night at Prater's apartment. The following morning, Motley, Gregson and Morgan were in the front room of the apartment, where Motley was seated on a couch with a .357 Magnum tucked under his leg. Morgan was seated in a chair with a shotgun across his lap. Prater and Merkson were in the kitchen. Morgan told Gregson to remove her shirt and dance for him, but Gregson refused. Motley made a comment to Morgan, and Morgan shot Motley in the chest with the shotgun. Morgan took the gun from Motley's body and put it in his own waistband. *Id*. Morgan told Prater and Merkson to clean

---

³There are three reported Illinois Supreme Court decisions on Morgan's case: (1) Morgan's direct appeal, *People v. Morgan*, 492 N.E.2d 1303 (Ill. 1986) (*Morgan I*), *cert. denied*, 479 U.S. 1101 (1987); (2) Morgan's post-conviction appeal, *People v. Morgan*, 719 N.E.2d 681 (Ill. 1999) (*Morgan II*); and (3) Morgan's successor petition for post-conviction relief, *People v. Morgan*, 817 N.E.2d 524 (Ill. 2004) (*Morgan III*). This history is taken from *Morgan III*.

up Motley's body. Prater and Merkson placed the body in a laundry bag and wrapped it inside a mattress. Morgan told Gregson to clean Motley's blood from the floor, which she did. *Id*. at 528-529.

Morgan then sent Prater to buy alcohol and fill his car with gasoline. Prater did as instructed, and returned approximately 15 minutes later. *Id*. at 529. Morgan told Merkson to take Motley's body out of the apartment. Merkson made a comment that caused Morgan to chase him to the front room. Morgan then hit Merkson in the head with the butt of the handgun, and again told Merkson and Prater to remove Motley's body from the apartment. Merkson made another comment to Morgan, who then told Merkson to get on his knees and face the floor. Prater testified that he saw Morgan point the handgun at Merkson's head from about four to five feet away. Prater then turned to face the wall, heard a shot, and looked back to see Merkson's body on the floor, while Morgan stood beside him, holding the handgun. Gregson also testified that she saw the handgun in Morgan's hand as he stood near Merkson's body. *Id*.

Morgan then instructed Gregson to clean up Merkson's blood, and told Prater to remove the body from the apartment. Prater began to tie up Merkson's body, and then Morgan came up behind Prater and began shooting at him. Prater stated that he felt a bullet go by his head. He then ran through the kitchen and out the back door. *Id*. Morgan, armed with the handgun, then took Gregson out of the apartment by her arm. A neighbor, who had heard the shots, called the police. The police found the two bodies, a loaded shotgun, a fingerprint from a dresser later identified as Morgan's, a bullet from the floor, and a bullet from the downstairs neighbor's ceiling. *Id*. at 529-530.

Morgan took Gregson to the South Shore Motel, where he checked in under an alias and raped her. *Id*. at 530. Later, Morgan took Gregson back to the car, where he was witnessed by a

3

motel employee putting the gun to Gregson's head. Morgan saw the employee, aimed the gun at him and began to chase him. Morgan soon gave up the chase, pushed Gregson into his car, and drove. Not long thereafter, Morgan stopped the car and told Gregson to get out at the side of the road, warning her not to tell anyone what happened. He was arrested the next day. Prater contacted the police and informed them that Morgan had killed both men. Gregson confirmed Prater's statements to police. *Id*. at 530. Both Prater and Gregson testified at trial as the only eyewitnesses against Morgan. (Pet. at 5.)

On June 2, 1986, the Illinois Supreme Court affirmed Morgan's conviction and sentence of death, vacated the extended terms of imprisonment imposed for the rape and kidnapping charges, and reduced the rape sentence to 30 years, and the kidnapping sentence to 15 years. *Morgan I*, 492 N.E.2d at 1306. The United States Supreme Court denied certiorari*, Morgan v. Illinois*, 479 U.S. 1101 (1987), and denied Morgan's petition for rehearing. *Morgan v. Illinois*, 481 U.S. 1025 (1987).

Then-Governor Ryan commuted Morgan's sentence in January 2003, so that the maximum sentence available became natural life without parole or mandatory supervised relief. *Morgan III*, 817 N.E.2d at 526.

Gregson's Arrests

Gregson was arrested twice in 1982, in two separate instances, unrelated to the murders or to each other: (1) on April 16, 1982, Gregson was arrested for possession of a controlled substance and possession of cannabis; (2) on May 4, 1982, Gregson was arrested with Lawrence Froio, and she was charged with two counts of possession of a controlled substance, and one count of possession

4

of marijuana. (Pet. at 22.)[4]  Gregson died in 1995.  (Pet. at 18.)  The State's treatment of Gregson in connection with the arrests is central to Morgan's present claims.

Morgan's Petitions for Post-Conviction Relief

On January 20, 1988, Morgan challenged his convictions and the death sentence by filing a petition in the Circuit Court of Cook County pursuant to the Post-Conviction Hearing Act (725 Ill. Comp. Stat. 5/122-1 et seq.).  *See Morgan II*, 719 N.E.2d at 686.  The circuit court dismissed all of Morgan's claims without an evidentiary hearing, with the exception of a portion of the ineffective assistance of counsel claim.  On that claim, the court held an evidentiary hearing, ultimately denying any relief.  *Id.*

Morgan appealed the circuit court decision directly to the Illinois Supreme Court.  *Id*.  On September 23, 1999, the Illinois Supreme Court affirmed Morgan's convictions and vacated his death sentence, remanding the case to the circuit court for re-sentencing.  *Id.* at 712.  Morgan's petition for a writ of certiorari to the United States Supreme Court was denied on March 20, 2000. *Morgan v. Illinois*, 529 U.S. 1023 (2000).

On October 19, 2000, while the remand to the circuit court for re-sentencing was pending, Morgan filed a second petition in the circuit court, the Successor Petition for Post-Conviction Relief and Petition for Relief from Judgment ("the Successor Petition") on the basis of a due process violation and new evidence of his "actual innocence," specifically, that Prater had recanted his trial testimony in an affidavit dated September 26, 2000.  *Morgan III*, 817 N.E.2d at 525-526;

---

[4]Morgan's Petition states that the arrest was May 3 (Pet. at 22), but his Motion and the criminal history for Phyllis Gregson provided to this court at oral argument on February 24, 2009 both give the date of May 4.  (Mot. at 5; Criminal History for Phyllis Gregson, May 8, 1981.)

Defendant's Motion for Leave to File Amended Successor Petition, Ex. A, Affidavit of Elijah Prater.)[5] Prater stated in his affidavit that one of the two men Morgan was convicted of murdering had actually killed the other, and that Morgan had killed the second one in self defense. (Prater Aff. at 3.).

The circuit court held an evidentiary hearing on Morgan's Successor Petition, at which Prater testified regarding his new version of the facts. *Morgan III*, 817 N.E.2d at 530. In Prater's new testimony, Motley and Merkson got into an argument at Prater's apartment. Motley hit Merkson with the handgun, then used the same gun to shoot Merkson in the head. Motley then turned toward Morgan and Prater, pointing the handgun at them. Morgan shot Motley in self defense, killing him. Prater stated that he then left the apartment, after both men were dead, to get liquor and gasoline. Upon return, Prater helped tie up the bodies and clean up the blood. Morgan shot at Prater as he was cleaning up, and Prater then fled the apartment. *Id*.

Prater testified that he tried to tell this version of events to the police, but that he was coerced into changing his story to implicate Morgan. *Id*. In his current Petition, Morgan claims that "Chicago Police officers extracted Prater's false testimony only after an interrogation spanning four days in which he was handcuffed and stripped of clothing as well as threatened with physical violence and prosecution for the murders." (Pet. at 3.)

Lemuel Bell, a friend of Prater's, also testified at the hearing on the Successor Petition. Bell testified that Prater told him that Motley had shot Merkson, and that Morgan had "saved the day" by shooting Motley. *Morgan III*, 817 N.E.2d at 530.

---

[5]A copy of Defendant's Motion for Leave to File Amended Successor Petition, including a copy of Prater's affidavit, was provided to this court at the February 24, 2009 hearing.

On March 22, 2001, Morgan filed a motion for leave to file an Amended Successor Petition for Post-Conviction Relief which included claims that the State treated Gregson favorably on her two arrests, and that the favorable treatment provided a motive for her to manufacture testimony against Morgan, but withheld that fact from Morgan's trial counsel. On April 6, 2001, the circuit court granted the motion to file the Amended Successor Petition, but barred Morgan from presenting any evidence at the evidentiary hearing that had not been included in the original Successor Petition. (Pet., Ex. XX, Apr. 2, 2001 Hrg. Tr. at 17-24.)[6] The court said that the claims in the Amended Successor Petition would not be addressed until the Successor Petition was resolved and the re-sentencing hearing concluded. *Id*. at 24. The record on the present motion does not disclose how they were addressed by the circuit court, but on October 29, 2001, the circuit court denied all of Morgan's claims under the Successor Petition. (Pet. at 10.) Morgan appealed the circuit court's decision directly to the Illinois Supreme Court. (*Id*.)

On September 23, 2004, the Illinois Supreme Court denied Morgan's appeal, rejecting Morgan's claim of actual innocence; it found Prater's recantation was not "sufficiently compelling that a decision by the trial court to reject that evidence in favor of the original testimony was manifestly erroneous." *Morgan III*, 817 N.E.2d at 531. Important for Morgan's claims here, the Court quoted the circuit court's opinion that there was no credible evidence that Prater had been coerced to give false testimony. *Id.* The Court also relied upon Gregson's trial testimony and dismissed Morgan's argument that Gregson's testimony was the product of an "ulterior motive" as "unsubstantiated speculation." *Id*. at 533.

Morgan filed his Petition for a Writ of Habeas Corpus– Person in State Custody in federal

---

[6]A copy of the transcript was provided to this court at the February 24, 2009 hearing.

court on June 11, 2008. [Dkt 1.]

## LEGAL STANDARD

Because the discovery rules applicable to other civil cases do not apply to habeas petitions, a petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1977). To make a successful discovery request, Morgan must comply with Rule 6 of the Rules Governing § 2254 Cases, which provides the scope and extent of permissible discovery as follows:

> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.
>
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254.

That requires Morgan to: (1) identify the essential elements of his constitutional claims, showing that the underlying facts, if established, "constitute a constitutional violation;" and (2) show good cause for the discovery requested. *U.S. ex rel. Ronald Barrow v. Walls*, 2003 WL 21087958 at * 1 (N.D. Ill. May 13, 2003 ) (*citing Bracy,* 520 U.S. at 908-09). To establish "good cause" for purposes of Rule 6, Morgan must show that "specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy*, 520 U.S. at 908-09 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Where such facts are shown, "it is the duty of the court to provide the necessary facilities

and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909.

**DISCUSSION**

Morgan's Habeas Claims and Discovery Requests

Morgan asserts five counts in his Petition: (1) knowing use of false testimony and false representation by the State; (2) suppression of material evidence favorable to the accused; (3) failure to consider recanted testimony; (4) denial of counsel of choice; and (5) denial of effective assistance of counsel.[7] Morgan requests the following discovery:

(1) Any and all documents and tangible things relating to: investigations, arrests and convictions of; conversations or negotiations with; promises or offers of immunity or other favorable treatment made to; or any other contact that the State had with Phyllis Gregson between January 29, 1982 and June 14, 1983, including but not limited to any such conversations had with Gregson at any Chicago Police station, at Cook County Jail, or at Dwight Correction Center.

(2) Any and all photographs of Elijah Prater that the State took on or around January 29, 1982, including but not limited to the "ID photo" referenced in the Evidence Report (Exhibit 1 to the Motion).

(3) Any and all documents or tangible things related to any of the counts of Morgan's Petition for Habeas Corpus claims that the State has not previously produced.

(Mot. at 2.)

The first two discovery requests relate to certain of Morgan's habeas counts: (1) knowing use of false testimony and false representation by the State, and (2) suppression of material evidence favorable to the accused. Morgan largely addresses both of these counts together in his discovery

---

[7]Morgan claims that attorney Steven Decker was ordered by the trial court to proceed with Morgan's trial although attorney Decker was inexperienced and not associated with Morgan's chosen counsel. The State did not oppose Morgan's motion for an order permitting discovery from Steven Decker, which was granted on December 31, 2008. [Dkt 49.] Morgan was granted leave to serve a subpoena for deposition upon attorney Decker. (*Id.*)

9

motion, asserting that the State coerced Prater's testimony, withheld photos that would corroborate Prater's testimony at the hearing on the Successor Petition, and failed to disclose exculpatory statements Gregson made. Morgan also alleges that the State suppressed evidence of Gregson's criminal history and favorable treatment by the State. (Pet. at 35.)

To satisfy good cause in support of his motion for discovery, Morgan must demonstrate that if the facts are fully developed with respect to these two counts, he can "demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-909. "[D]ifficulties of proof aside," there is no question that if Morgan can prove that Prater's original testimony was coerced or the State concealed the fact that it gave Gregson favorable treatment in exchange for testimony against Morgan, Morgan's petition would raise constitutional claims. *See Bracy*, 520 U.S. at 905-906. The Respondent focuses his arguments primarily on the issue of whether Morgan's current claims are procedurally defaulted. (*See* Resp. at 3.) Putting aside the question of whether any of Morgan's claims are defaulted or otherwise procedurally improper, the issue on the current motions is whether, if these requests are granted, the evidence obtained will assist Morgan in demonstrating that the State made false statements and suppressed evidence.

Evidence Regarding Gregson

Morgan requests documents and tangible things relating to investigations, arrests or convictions of Gregson, and conversations, negotiations with, promises or offers of immunity or other favorable treatment made to, or any contact between, Gregson and the State. Morgan argues that he needs this information because the prosecution concealed the fact that Gregson received a suspended sentence on a drug charge in exchange for her testimony against Morgan.

10

Morgan claims that he was given false or misleading information about Gregson on more than one occasion from the State, and that the State withheld information from him. Morgan says that he has requested "Gregson related information" from the State since before his trial, beginning with a request on February 23, 1982 for arrest and conviction records of the prosecution's intended trial witnesses. (Mot. at 4-5.)[8] In June 1982, in response to the discovery request, and prior to trial, the prosecution listed Gregson as a possible trial witness, but omitted any arrest information, instead stating, "The People have no knowledge at this time that any of its potential witnesses have any criminal convictions."[9] Morgan asserts that the prosecution did not address the portion of the request regarding arrests, even though Gregson, one of the prosecution's lead witnesses against Morgan, had been arrested twice in the months before the prosecution's discovery response. (*See* Pet. at 22.)

Morgan's counsel told this court at the hearing on the present motion that the prosecution stated at the trial that none of the prosecution witnesses had any drug convictions. As described by Morgan's counsel, the only information the prosecution provided at trial about the disposition of Gregson's May 1982 arrest was a statement, on the record, that the prosecution had "no paper" regarding the arrest, but that they had made a phone call to the police station, and had been told that Gregson had attended "drug school," thereby expunging the May 4, 1982 arrest from her record.

The State produced Gregson's "criminal history" to Morgan in 2000 in response to a subpoena in Morgan's post-conviction proceeding. (Pet. at 23, 33.) According to Morgan's counsel, the only written information Morgan has received regarding Gregson's criminal history is a Bureau of

---

[8] *See* Motion for Discovery and Inspection, filed in the Circuit Court of Cook County on Feb. 23, 1982, a copy of which was provided to the court at the Febrary 24, 2009 hearing.

[9] Answer to Discovery, filed in the Circuit Court of Cook County on June 18, 1982, a copy of which was provided to the court at the February 24, 2009.

Identification ("B of I") sheet (also called a "rap sheet") for Gregson, and the arrest reports for Gregson's April and May 1982 arrests.[10] Gregson's rap sheet does not state a disposition for her May 1982 arrest.

Morgan also received a copy of the arrest report for Lawrence Froio, Gregson's co-defendant in the May 1982 arrest. Froio received a six month suspended sentence in August 1982 for that arrest as reflected on his rap sheet. Before his death in 2001, Froio told Morgan's investigator that he and Gregson both pled guilty and both were given a sentence of six months supervision. (Amended Successor Pet., Affidavit of LaDar Jones ¶¶ 9-13 (Mar. 14, 2001).) Morgan argues that Froio's statement proves that the prosecution's statement at trial was not true. (Mot. at 5.)

As counsel for the Respondent acknowledged at the motion hearing, the State's Attorney at Morgan's trial stated that the prosecution had information "through Ms. Gregson" that she had gone to drug school. Respondent's counsel argues that attendance at drug school is not inconsistent with the State's Attorney's representation that Gregson had no criminal record: If her record was expunged, it could have been expunged due to drug school attendance, and there would be no criminal record. A problem with that argument is that Gregson <u>has</u> a criminal record. The record of her arrest appears; it is the disposition that is missing.

On May 4, 2001, Morgan made post-conviction discovery requests to which the State objected in part. As to Morgan's request for "[a]ny and all documents referring or relating to promises or negotiations for offers of immunity or other favorable treatment of Phyllis Gregson," the State responded: "Before the evidentiary hearing in this cause, the State will provide the defense with documents, if any, relating to any promises or negotiations for offers of immunity or other favorable

---

[10]Copies of those documents were provided to this court at the February 24, 2009 hearing.

treatment to Phyllis Gregson." (Mot. at 6.) Morgan now claims that "[t]he State did not produce any documents nor make any representation to the state court that no such evidence existed." (*Id*.) Apparently the request was considered moot after the circuit court judge ruled that the evidentiary hearing would not include claims about Gregson made in the Amended Successor Petition.

In its decision on the Successor Petition, the Illinois Supreme Court stated that the information regarding the disposition of Gregson's arrests "should have been disclosed to defense counsel at the time of trial, but was not." *Morgan III*, 817 N.E.2d at 533. However, the Court concluded that Morgan could have explored the issue earlier, and dismissed as "speculation" Morgan's argument that favorable treatment influenced Gregson's testimony. *Id.*

The information regarding Gregson's 1982 arrests and their dispositions should have been provided at the time of trial in 1983. The State has never produced records evidencing the actual disposition of Gregson's May 1982 arrest. Likewise, it appears that, because of the circuit court judge's decision not to hear evidence on the Successor Amended Petition, the State never followed through on its agreement to provide "documents, if any, relating to any promises or negotiations for offers of immunity or other favorable treatment of Phyllis Gregson." If there is evidence of such promises or negotiations, it would be material to Morgan's claim that the prosecution not only failed to provide Morgan's trial counsel with information that should have been provided (which apparently is acknowledged), but that the failure prevented Morgan's trial counsel from exploring at trial a subject of potential impeachment of one of the State's two eyewitnesses.

Morgan's request is specific and limited in its scope, as required by Rule 6. Morgan is given leave to take discovery seeking: (1) documents reflecting or describing the disposition of Gregson's May 4, 1982 arrest, including notes regarding that arrest; and (2) documents discussing or referring

to any promises or negotiations for offers of immunity or other favorable treatment to Phyllis Gregson regarding her 1982 arrests. This discovery may include subpoenas to the State's Attorney's Office, the Chicago Police Department and the Cook County Sheriff's Office, because the Respondent states that he does not have any such documents. (Resp. at 4, n.1.)

Evidence Regarding Prater

Morgan requests "Any and all photographs of Elijah Prater that the State took on or around January 29, 1982, including but not limited to the 'ID photo' referenced in the Evidence Report." (Mot. at 2.) The "ID photo" in question is listed in an "Evidence Report" (attached as an exhibit to Morgan's Motion) generated during the investigation of the murders of Motley and Merkson. (Mot. Ex. 1.) The motion does not make clear when Morgan received a copy of the Evidence Report, or when he became aware of the reference to the photo.

At the evidentiary hearing on the Successor Petition, Prater testified that his trial testimony had been coerced. (*See* Pet. at 36-38.) In his Petition, Morgan argues that Prater was mistreated at the police station when he went there to be questioned about the murders, and that Prater was held without his clothing. Morgan claims that Prater was given "a white plastic foam 'bubble wrap' gown . . . , handcuffed to the wall, and left there for a prolonged time." (Pet. at 17.) Prater's girlfriend Cynthia Ruwe testified at the Successor Petition evidentiary hearing that they saw Prater through the window of the police station being held without his clothing, and that he was covered in some kind of bubblewrap material. (*Id.*) Morgan claims that Prater was not told he could leave, and that he consequently stayed at the police station for two to three days, until the police released him after his grand jury testimony. (*Id.*)

Morgan claims that the photo of Prater at the police station on or about January 29, 1982 would corroborate Prater's and Cynthia Ruwe's testimony and undermine the credibility of the State's witness at the post-conviction hearing who claimed that Prater was fully clothed at all times he was at the police station January 29 to 31, 1982. (Mot. at 7-8.)

The courts that earlier considered Morgan's argument regarding Prater's recantation found no credible evidence that Prater was coerced. If the photograph does depict Prater at the police station without his clothing, Morgan's argument would be bolstered. Further, it is not unduly burdensome for the State to produce the one specific photo noted in the Evidence Report, and any other photos taken on or around January 29, 1982 of Prater at the police station. Although the court cannot determine if the photo will prove that Prater was held at the police station without his clothes, the court should provide "the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909.

<u>The Catchall Request</u>

Morgan's request for "[a]ny and all documents or tangible things related to any of the counts of Morgan's Petition for Habeas Corpus claims that the State has not previously produced," is a broad and shapeless request intended to catch anything that the State has failed to produce already. Such a request does not comport with the provisions of Rule 6 regarding specificity or good cause and is not clearly tied to the essential elements of Morgan's claims. That overly broad discovery request is therefore denied.

**CONCLUSION**

For the foregoing reasons, Morgan's motion is granted in part and denied in part. Morgan is granted leave to take discovery seeking the following: (1) documents reflecting or describing the disposition of Phyllis Gregson's May 1982 arrest, including notes regarding that arrest; (2) documents discussing or referring to any promises or negotiations for offers of immunity or other favorable treatment to Phyllis Gregson regarding her 1982 arrests; and (3) photographs of Elijah Prater taken while he was at the police station on or around January 29, 1982. Morgan's other discovery requests are denied.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

March 23, 2009